Margaret McBride and Eileen Berg. This case is being heard via Zoom due to the COVID crisis. We're going to have a procedure that we're going to follow today. Each side will get 10 minutes of uninterrupted presentation. After each side presents its argument, the judges will have an opportunity to ask questions that they may have. The appellant can reserve some time for a short Does anyone have any questions about how we're going to proceed today? Okay, would the parties who are going to make arguments today please state their names and the parties they represent, beginning with the appellant. Good morning. Ioana Gossett on behalf of defendant appellant Mr. John O'Connor. Thank you. Assistant State's Attorney Stacey Weber on behalf of the people of the state of All right. All right. Very well then. No questions. Ms. Gossett, you may proceed when you're ready. Thank you, Your Honor. Good morning and may I please the court. I would like to reserve two minutes of my time for rebuttal. This appeal involves the conviction of Mr. John O'Connor following a car accident which resulted in the death of a person and serious injuries to others. While it is undisputed that this that the event on February 1st, 2013 was a tragedy, the state failed to establish that this accident was a crime. The trial court erred in denying Mr. O'Connor's motion for a directed verdict on leaving the scene of the accident charged because it failed to establish beyond a reasonable doubt that Mr. O'Connor was not that Mr. O'Connor did not remain at or as close as possible to the scene of the accident. The record evidence established to the establishes to the contrary. Mr. O'Connor remained sitting in his vehicle, waited for the emergency personnel to arrive, cooperated with the police officers and went to the police station to further aid the investigation. The state presented the testimony of several police officers, all of whom placed Mr. O'Connor at or near the scene of the accident. Officer Coffey, the first officer to arrive at the scene, testified that he found Mr. O'Connor seated in his vehicle which was parked just north of River Oaks Drive on Wentworth Avenue. Officer Collins similarly testified that he on Wentworth Avenue north of River Oaks Drive. The state argued that Mr. O'Connor left the scene of the accident because he did not stop his car immediately following the first collision. In making this argument, the state sought to artificially delineate between the first collision which occurred at 1377 Wentworth Avenue and the second collision which occurred on Wentworth It's contradicted by the state's own evidence. Officer Collum testified that this accident was one continual motion from one end to the other. Officer Collum similarly acknowledged that he didn't measure the distance between the first collision and the second collision but acknowledged that they occur within a matter of seconds. This evidence renders unreasonable the state's position that this were two separate accidents as opposed to one causally related accident. But even if this agrees with the state's position that these were two separate accidents, the state failed to establish that Mr. O'Connor did not remain as close there to as possible to the scene of the first collision. Section 11403 of the vehicle code only requires that a driver stop his vehicle as close as possible to the scene of the accident or forward return to the scene of the collision. Here the state presented no evidence as to the distance between the first collision and the place where Mr. O'Connor was located following the accident. Nor did the state explain through evidence or argument what distance is considered or not considered as close to as possible so that it would be a violation of section 11401A. The state similarly failed to establish beyond a safety or reasonably return to the scene of the first collision. And this is especially true given the chaotic scene on Wentworth Avenue and River Oaks Drive. Due to the complete lack of elements, due to the absence of all of these elements, no argument can be made that a reasonable juror could have found that Mr. O'Connor left the scene of the first collision. And this court should reverse Mr. O'Connor's conviction on leaving the scene of the accident on this basis alone. In addition, the state failed to establish that Mr. O'Connor did not aid or fail to provide information following the accident. The record evidence establishes the contrary. Mr. O'Connor remained at the scene, seated in his vehicle, waited for the emergency personnel to arrive, and provided the necessary information. Based on this record, the state failed to prove beyond a reasonable doubt that Mr. O'Connor was guilty of leaving the scene of the accident. The trial court denials of a motion of Mr. O'Connor's motion for a directed verdict on the reckless homicide and reckless aggravating charges was an error because the state failed to establish beyond a reasonable doubt that Mr. O'Connor was excessively speeding at the time of the collision and because the state failed to establish other factors indicative of recklessness. The state failed to establish reliable evidence regarding Mr. O'Connor's speed. The state relied on the testimony of officer Colum to establish that Mr. O'Connor was traveling at 53 miles per hour at the time of the first collision and 38 to 49 miles per hour at the time of the second collision. However, officer Colum's estimation of Mr. O'Connor's speed was based on three unsupported assumptions. First, officer Colum assumed that Mr. Cheen's, the victim's vehicle and Mr. O'Connor's vehicle traveled together for 21 feet, yet he failed to include this assumption in his final report regarding the accident. Officer Colum then assumed that Mr. Cheen's vehicle was traveling at 35 miles per hour but provided no evidentiary basis for this assumption. Officer Colum then also assumed that the after impact speed of the two vehicles was 48 miles per hour but without the first two assumptions this third assumption necessarily fails. Officer Colum's estimation of Mr. O'Connor's speed is further flawed because the state, because officer Colum used a collinear formula as opposed to an angular formula to establish Mr. The court held that if either of the cars diverge even at a slight point from the pre-collision direction, the collision should be classified as an angular and not as an inline collision. Officer Colum's utilization of this inline collision rendered unreliable his testimony regarding Mr. O'Connor's speed. The state offer no other evidence regarding Mr. O'Connor's speed other than Mrs. Halstern's retracted testimony. Mrs. Halstern initially testified that she observed Mr. O'Connor traveling at 80 miles per hour. She then walked back her original estimation of Mr. O'Connor's speed and acknowledged that in fact she did not know at what speed was Mr. O'Connor traveling. Speeding was a necessary precursor for a finding of guilt on the reckless homicide and reckless aggravated charges. The state bears the burden to establish beyond a reasonable doubt that Mr. O'Connor was speeding at the time of impact and he failed to do so here. But even if the state's evidence of Mr. O'Connor's speed is taken at the face value, the state failed to prove that traveling at 23 miles per hour constitutes excessive speed. Case law does not define this term. Under Illinois law, traveling at 23 miles per hour over the speed limit, it's a petty offense, a less serious offense than a misdemeanor. The state offer no evidence or argument as to why Mr. O'Connor's speed of 23 miles per hour over the speed limit was excessive. But even if this court agrees that Mr. O'Connor was excessively speeding, the trial court erred in denying Mr. O'Connor's motion for a directive verdict because the state failed to offer any factors indicative of recklessness. Evidence of excessive speed by itself cannot sustain a conviction for reckless homicide. Reckless aggravating driving cases generally fall within three categories, which are also called the Paalbeck categories, the Paalbeck, Paalbeck factors, I apologize. The first Paalbeck factor involves cases where the driver commits multiple traffic offenses, which demonstrate his or her willfulness. Here the state failed to establish beyond a reasonable doubt that Mr. O'Connor committed any traffic offenses. Following the accident, Mr. O'Connor was issued two misdemeanor citations, one for failing to reduce the speed to avoid an accident and one for failing to aid and provide information following the accident. These misdemeanor charges were predicated on the same conduct that forms the basis of the charges of trial and were both dropped by the state. Nor did the state present evidence beyond a reasonable doubt that Mr. O'Connor committed either one of these offenses. First, in regards to failing to reduce the speed, the state failed to establish that Mr. O'Connor did not reduce the speed before between the collisions. Officer Column, in fact, testified that Mr. O'Connor's speed reduced from 58 miles per hour at the time of the first impact to 38 to 49 miles per hour at the second impact. Nor did the state present evidence beyond a reasonable doubt that Mr. O'Connor was not attempting to brake before the first collision. Officer Column again acknowledged that the absence of pre-impact tire marks did not mean that Mr. O'Connor was not, in fact, reducing or trying to slow down before the first collision. I can start wrapping up. Yes. The state was never charged with any other traffic citations in relation to this accident. The state also failed to establish the second public factor that Mr. O'Connor displayed a disregard for particular surroundings. The state presented no evidence that Mr. O'Connor was weaving or changing lines or cutting off other vehicles or that he ignored some precarious road conditions. By way of comparison, reckless conduct was conduct involving drag racing and cutting off other vehicles and changing lines in a dangerous manner. And that's people versus Ziegler. Or passing three vehicles in a row in a vicinity of small children while forcing an oncoming vehicle to pull in a gas parking lot to avoid a collision. And that's people versus Birch. In sum, because there was no evidence of corroborating factors of recklessness, Mr. O'Connor's conduct was at most negligent and not criminal. Therefore, the court erred in denying Mr. O'Connor's motion for a directed verdict on the reckless homicide and reckless aggravating driving charges. For all the stated reasons and for the reasons fully explained in Mr. O'Connor's brief, Mr. O'Connor respectfully requests that this court vacate the guilty verdict, reverse the judgment of conviction, and grant any another such relief that the court deems appropriate. Thank you. Thank you very much. Justice Berg, do you have any questions? Yes, Ms. Gessett, is it correct that the place of the initial accident and the second accident was about two blocks difference? Yes, that's correct. Okay, and is it your position today that two blocks is insufficient to establish that he left the scene of an accident? Yes, Your Honor. In these circumstances, the state failed to establish that Mr. O'Connor could have reasonably stopped his vehicle immediately following the first accident. The state presented no evidence that he, in fact, could have pressed the brakes and stopped right there. So you're saying that the state failed because the state didn't establish that it was possible for him to stop after the first accident? That's correct, Your Honor. And your position is the only place he could stop was after the second accident happened and the fluids in his car caused his car to stop? Your Honor, I respectfully disagree. There was not sufficient evidence. The state didn't establish that, didn't establish beyond a reasonable doubt that Mr. O'Connor's vehicle stopped due to the fluid. I mean, I know Officer Collum testified that, in his opinion, there was low fluid and that might have been, that might have caused the car to stop. But never conducted an operational test to actually determine if that Mr. O'Connor's car was not operating anymore. And the state, in addition, I wanted to also point out the fact that under the statute, Mr. O'Connor did not violate the statute because he stopped his vehicle as close there to as possible as to the scene of the first collision. Okay. And my other question was, wasn't there testimony, and I don't remember who it was from, that he was going to come between lanes of traffic? Yes, Your Honor. Mrs. Halster testified, Mrs. Halster testified that she observed Mr. O'Connor's vehicle moving towards the vehicle, towards their vehicle, and told her husband as follows, it looks like the guy is going to try to come between the two lines of traffic, but I don't know where he went. So that was the testimony of Mrs. Halston. She, in fact, did not see Mr. O'Connor moving or changing lines. Thank you, Ms. Gossett. Thank you. That's all. Okay. Thank you, Justice Burke. Justice McBride, do you have questions? Yes. Good morning, Ms. Gossett. Good morning. Wasn't there testimony by the state's expert that there were, in fact, two collision locations? Yes, Your Honor. He testified that there were two scenes, two crash scenes. Okay. And the charge against Mr. O'Connor was that he left the scene of the first collision, not the second? Correct. All right. So doesn't the fact finder, or us as we're reviewing this, and we accept the testimony is true, that that is evidence that he did not stop at the first collision site? Your Honor, the requirements of the vehicle code of section 11-401 state that a driver needs to stop his vehicle at or as close there to as possible to the scene of the accident. Right. And here, the state failed to establish the second part of this test. The student scene of the first collision. But who decides that? You arguing this case now in retrospect, or the fact finder, who decides what is as close as practicable? Your Honor. If there's an evidence to support that, isn't that enough to get past this directed finding? Your Honor, because this was an essential element of the offense, and the state failed to establish an essential element of the offense, this case should not have been preceded beyond the motion for a directed verdict. In other words, the lack of an essential element should have precluded the trial court from advancing the case for a determination of the trial effect. But in this case, in this particular case, one of the questions for the fact finder was whether or not there was, in fact, two accidents. And they could have concluded that by continuing on, who is to say that he couldn't stop after that first accident? And isn't there circumstantial evidence to suggest that rather than stopping, he continued through the intersection and then was engaged in a completely separate collision? Your Honor, as a matter of law, this reviewing court is reviewing the denial of the motion for a directed verdict under the new standard of review. And therefore, the assessment of the evidence by the trial court is not germane to this appeal. This court can take a fresh look under the new standard of review and decide whether, in fact, necessary elements of the offense of leaving the scene of the accident were met. And um, the state failed to establish that Mr. O'Connor did not did not stop his vehicle as close as possible to the first to the scene of the first collision. But isn't that always going to be? There's no definitive line in any case or law that says as close as possible. Is there? I mean, I don't think anyone cited a case that would suggest there's some line of demarcation. As to what is as possible, right? But the state has the burden of proof beyond a reasonable doubt. And here they fail to establish that. All right. Well, now moving on to the other issue, as far as the you have argued that they did not establish his behavior was reckless. It was really just negligent. Now, as far as we're concerned, the testimony did establish that he was traveling 23 miles per hour over. At least there's testimony that supported that, correct? Yes. And there was some testimony that he may have been even traveling faster than that because there was a lay witness who said that she thought he was going 80, but then she came kind of came back on that. But either way, let's assume we've got 23 miles over. Your argument is, is that that's not an excessive rate of speed because it's a petty offense. What what case says it's not reckless because it's a petty offense? There is no case that delineates what what's an excessive speed. There's no case law what determines what an excessive speed is. I believe there's people versus Bonsi, which establishes that driving at 40 miles per hour over the speed limit. But even in that case, other factors have have to be implicated to the reckless conduct. All right. So that wasn't the other point you made. One is that 23 isn't really excessive speeding. I think that's still a question of fact. But in terms of other other actions here, there were witnesses that said this was a residential area and that there was traffic going both ways. Now, didn't the defendant say that it wasn't residential? Your Honor, as to the residential area, the area by Wentworth Avenue and River Oaks Drive, that's a commercial area. So the area of the first collision, it's a residential area. But the intersection of Wentworth Avenue and River Oaks Drive, it's a commercial area. However, as a matter of law, even in residential cases, excessive speed alone is not sufficient to people versus Brady. Reckless driving conviction was affirmed where the driver was driving over 50 miles per hour and was changing lines in the dangerous matter. Or people versus Moreno, reckless driving by the driver who struck the victim, but 10 or 12 children were present. Or in people versus Birch, it was a case where the driver was passing three vehicles in a row in a two lane road and it was a residential area and also people, children were present. And therefore, something else, other aggravated factors need to be present to establish reckless conduct. But your argument was that speeding alone wasn't enough. Your argument in your brief was not that speeding plus residential area plus two lane, this was just two lanes, wasn't it? North and south? Wentworth Avenue, yes. So now you're arguing that those things aren't in addition. Is that correct? You're saying that residential area doesn't enhance anything. The fact that this was two lanes doesn't enhance anything. And those things combined with 20, 23 miles over, couldn't establish reckless driving or reckless intent here. Not intent, but you know, recklessness. Sorry. Yes, Your Honor. And I believe in our briefs, we also mentioned the residential part. I mean, we responded in the reply brief to the state's argument that excessive speed by itself, even in residential areas, not sufficient to establish reckless conduct. And as to your question, Your Honor, yes, the state failed to establish each one of these individual factors. So an argument that a totality of those circumstances, which are based on this unsupporting and failing factors necessarily fails and cannot stand. So are you saying the state didn't establish the 23 miles per hour? They didn't establish it was a residential area and they didn't establish that this was simply a two lane highway where there wasn't room for more than one car to pass another? Your Honor, even if the state established this fact, the state failed to establish a conscious disregard of the mental element, the recklessness element of Mr. O'Connor. Okay, so you're saying a jury could never determine that he shouldn't have slowed down from his 23 miles over in a residential area on a two lane highway in which a death resulted. Your Honor, based on the circumstances and based on the state's failure to to establish by reliable evidence without any type of flaws, the exact the speed of Mr. O'Connor, so they failed to establish reliable evidence of excessive speed. The state failed to establish any other factors indicative of recklessness, such as a dangerous conduct or conscious disregard of particular surroundings or precarious road conditions. The state failed to establish beyond a reasonable doubt the recklessness. All right, that's all I have. Thank you. All right. In your first argument regarding whether or not he stopped to give aid, you're stating that after the first accident, the evidence shows he went on further and created a second accident, pushing a car into another intersection. If he, in fact, stopped his car as soon as he possibly could, doesn't that cut against the speeding argument that you're making? He was traveling so fast, he created massive damage in the first collision and then continued forward. Now, if he was trying to stop, apparently he must have been traveling at a great speed. Your Honor, the evidence officer column testified that Mr. O'Connor's speed decreased from 58 miles per hour to 38 to 43 miles per hour at the time of the second impact, which occurred on Wentworth Avenue and River Oaks Drive. And then Mr. O'Connor stopped his vehicle just past River Oaks Drive. Well, I mean, if he stopped as quickly as possible, he had to be traveling at a tremendous speed to hit these vehicles and continue down the highway. Your Honor, the state failed to establish beyond a reasonable doubt what Mr. O'Connor's speed was and the facts that you are mentioning. And it is the state's burden to establish excessive speed, and it failed to do so here. All right, I have nothing further. Thank you very much. Miss Webber. Thank you, Your Honor. May it please the Court. I will also start with the leaving the scene argument with counsel addresses first. There's no question that the defendant fled the scene of the first car crash that occurred at 1377 Wentworth. The people introduced into evidence People's Exhibit No. 8, which was an aerial photograph of the crash scenes and the area where defendant's car eventually came to a stop. And beyond just thinking of it as two blocks, which is indeed a great distance, looking at People's Exhibit No. 8, you can see visually how far, how much distance occurred between the first crash and the second crash at River Oaks Drive. And then again, how far defendant went from that stop. Now, even after he crashes into Mr. Chin at an excessive rate of speed, he continues to drive at an excessive rate of speed. Officer Cologne testified that the after impact speed of Danny Chin and therefore also the defendant was 48 miles an hour. So when they came out of the crash, both of them were driving 48 miles an hour. And Officer Cologne testified that when defendant hit the sutures, he was going between 38 and 49 miles an hour. So there's no evidence that defendants slowed down at all, not a mile per hour between hitting the hitting the first car and hitting the second car, other than the speed, other than hitting Mr. Chin himself, which slowed him down. So there's no evidence that after he hit Mr. Chin, he slowed down at all. First of all, there's no, there's also it's disputed that this, we dispute that this was one continuous crash. Defendant argued this at trial. He attempted to establish this at trial and close in his cross-examination of Officer Cologne. He asked Officer Cologne, this is one continuous crash, in other words, and Officer Cologne disputed that. Officer Cologne testified, quote, there was some time between the first crash and the second crash. And he continued, quote, the defendant left the scene. I don't know if you want to say fled, but he did not remain at the first scene. So there were clearly two different crashes. The one at 1377 Wentworth and the second in the intersection. Further, even after the second crash, defendant continued driving. And the evidence suggests that the defendant drove his truck until it would not go any further. Officer Cologne, again, who was a traffic crash reconstruction expert and who had reconstructed over 280 crashes, testified that it was his opinion based on the physical damage to defendant's truck, as well as the large fluid spill. The defendant's truck continued until it to believe that. The evidence creates a reasonable inference that that is, in fact, what happened. The trail of debris, the amount of damage, the fluid spill from the first crash to the second crash to where defendant came to a stop all indicate the defendant did not stop after the first crash. He continued going until he could go no further. And once his truck stopped with his license plate that it's linked to him, there's no point to him going on any further. But it does not change the fact that he fled from that first crash. Your Honor, moving on to the reckless homicide and aggravated reckless driving. The evidence in this case, again, in the light most favorable to the people, established the defendant was driving recklessly. There's no doubt that he was driving at an excessive rate of speed. All of the testimony in this case establishes that. Diane Halstern's testimony that she could see how fast he was going and it did not look like he was going to slow down. She testified that she believed he was going at least 80 miles an hour. She said, I quote, I saw him speeding. She further testified that defendant's truck was barreling down the road towards us and it was speeding. And she testified that it was definitely speeding way beyond a residential area speed limit. She does not have a radar gun. She is not pacing behind him. But she didn't walk back her statement that he was speeding. She maintained consistently throughout her testimony and cross-examination exactly how fast defendant was going, traveling down that road. That is corroborated by Officer Cologne's testimony who indicated the defendant was going approximately 58 miles per hour when he crashed into Danny Chin. And that's approximately, that's 23 miles an hour over the posted speed limit. Officer Cologne, again, was an expert in traffic crash reconstruction and he was admitted as an expert without objection. And he testified that his analysis was based on his training, his experience, his education in the field, and that the procedures he used were commonly accepted in the field of traffic crash analysis. Defendant talks about the assumptions that he made. He made calculations in this case. The only assumption that he made was the speed of the victim, how fast Danny Chin was traveling, when defendant crashed into him. He assumed that to be 35 miles an hour. And there's no evidence that that is an unreasonable assumption based on standard practice in traffic reconstruction. It is the posted speed limit. And again, Diane Halstern did not testify about that she saw both cars going too fast or that she saw another car. It was only the defendant whose speed stood out to her. Now, as to whether or not this was an excessive speed, there is no magic number. Defendant's not charged with misdemeanor speeding. He's charged with aggravated reckless driving. It is clear that he was going at an excessive speed. It is clear just from the damage to Mr. Chin's car and People's Exhibit Number 24, which was introduced at trial, the back of Mr. Chin's car is completely demolished. He didn't bump into him. He didn't tap into him. He crashed into him at such a speed that it completely crushed the back of Mr. Chin's car as he then pushed him forward 21 feet as they traveled together before spinning him into the other lane where he was then involved in a head-on crash with the Halsterns. With regard to the second crash, even if the was the lowest estimate that Officer Coulomb testified to, that was still excessive because the Saturas were stopped at a red light. They were stationary and the defendant could not or would not slow down enough to avoid hitting them and pushing them into the intersection where they were then struck by another car. So there's no doubt he was going at an excessive rate of speed. Now, although excessive speed by itself is not enough, there were other circumstances here in this case. There was the defendant's driving as Justice Burke pointed out. Diane Halstern testified that she saw the defendant from more than a block away as he was coming and that it looked like the truck was going to try to come between the two lanes of traffic. That is what she saw. That is what she of the defendant's driving. And she did say she didn't see where he went, but the defendant didn't disappear. We know where he went. He was behind Mr. Chen when he crashed into him from behind straight on. That is evidence of reckless driving. In addition to the speed, there is the surrounding area. This was a residential area. It was the middle of the afternoon. It was 1 45 p.m. on a Friday. It was a two-lane road. There were cars parked on either side of this road, traffic in both directions, and People's Exhibit No. 3, which was admitted at trial, shows that in the aftermath of the crash, the Halstern's car was actually on the grass in front of the residential homes in the area. The defendant further failed to avoid either crash. The evidence supports the inference the defendant made no attempt to avoid either hitting Mr. Chen or the Saturas. Both the damage, the extensive damage to the rear ends of both of those vehicles, he hit them straight on from behind and that there were no skid marks or tire marks or any kind of indication in the road the defendant made any attempt to swerve or brake or try to avoid the crash. The evidence is uncontroverted that the Saturas were stopped at the traffic light, stopped at the traffic light at Wentworth and River Oaks Drive, and the defendant, instead of stopping or slowing down to avoid crashing them, crashed into them from behind, pushed them into the intersection, where they were then struck by Ms. Muhnion as she was driving by, and then continued on 350 to 400 feet before his vehicle finally came to a stop. I would just, as again, Jacoubic does not stand for the proposition that counsel claims. That is a summary, the angular, if they departed any angle, that was the testimony of the If the directions of travel of both vehicles are on the same line before and after the collision, you have a candidate. That's exactly what happened here. Defendant hit Mr. Chin directly on from behind. He hit the Saturas directly on from behind. This was an in-line collision. And just briefly, I would ask to address the standard of review in this case, just because there was some confusion over whether this is de novo. The standard of review in this case, when the court is viewing it on the grounds of reasonable doubt, it is the standard set out in Jackson, the sufficiency of the evidence standard, and that the court should not retry the defendant or substitute its own judgment, but rather the evidence must be viewed in the light most favorable to the people as to whether any rational trier facts could have found the elements beyond a reasonable doubt. It is the same standard that applies in the motion for directed verdict when reviewing that that is set out in People v. Withers, which says, quote, requires the trial court to consider only whether a reasonable mind could fairly conclude the guilt of the accused beyond reasonable doubt, considering the evidence most strongly in the people's favor. When challenging the sufficiency of the evidence, whether it's for the motion for directed verdicts or the in this case, when viewed in the light most favorable to the people unequivocally supported a finding of guilt. And for these reasons, and those contained in our brief, we respectfully ask that this court affirm the defendant's convictions for reckless homicide, aggravated reckless driving, and leaving the scene of an accident causing great bodily harm. Thank you, Ms. Weber. Justice Burke, do you have any questions? Ms. Weber, was there any testimony in the trial court that there was a place that he could have pulled over at after the first accident? Was there any description of the scene which would have refuted that? There was no description of the scene other than it was a two-lane road. But again, the distance between the first crash and the second crash, the fact that the defendant did not slow down other than Mr. Chinn's vehicle slowing him down by crashing into him, it's just unreasonable to assume that in that two blocks there was no place the defendant could have either pulled over or just come to a stop before he then crashed into the Saturus. Thank you. That's my only question. Thank you. All right, thank you. Justice McBride, do you have any questions? Yes. Good morning, Ms. Weber. Good morning. Could you explain, were there two different intersections that the car, the defendant's car went through or just the first was an intersection and then the second collision occurred before another block? What is your expectation? The first, there are several cross streets between the first crash and the second crash. There's several cross streets. So the first crash occurred at 1377 Wentworth. It then proceeds to go from a residential area to a commercial area. There is a diagonal street that it appears happens before the main intersection of River Oaks and Wentworth, which is where the Saturus were stopped when the defendant crashed into them. That is a rather large intersection. And on the other side of River Oaks Drive is the Forest Preserve, which is where defendant continued until his car came to a stop. So there were cross streets between the intersection of the first collision and the intersection of the second collision? Yes, Your Honor. So also, you've said that the, our standard of review is basically the same as a reasonable doubt? Yes, Your Honor. That is what is indicated by our Supreme Court in People v. Withers and by People v. Connolly, which was cited by both the defense and myself. All right. So there was testimony in this case of a state expert, but there was no conflicting evidence from any other experts about this linear versus collinear. There was only testimony that this was a collinear crash. That is correct, Your Honor. And the witness also said that he left the scene of the first collision, that Mr. O'Connor left the scene. He said, I don't, he wasn't going to interpret legally whether it was a fleeing, but he did say that he left the first collision. Yes, Your Honor. He did say, he did testify to that. And the jury in this case heard from Mr. O'Connor that he had nothing to do with that first collision. Isn't that right? That is correct, Your Honor. So if they chose it, if a fact finder believed the expert, there was testimony that said he left the scene. Yes, Your Honor. And again, the credibility of the witnesses is within the exclusive province of the jury. All right. Plus there was testimony that his vehicle, Mr. O'Connor's vehicle stopped approximately 350 to 400 feet after the second collision. Is that right? Yes, Your Honor. All right. So that's the length, that's the length of about four football fields. If you, was it 400 yards? I'm sorry, I missed. No, Your Honor, it was 350 to 400 feet, but yes, it was over the length of a football field. All right. So that was a question for the fact finder, either or, right? Yes, Your Honor. All right. And do you agree that there's some, that 23 miles per hour over, if that was what the jury concluded or a fact finder, that that coupled with a residential area in itself isn't enough to support recklessness? No, Your Honor. I, it is determination on the facts and the facts in this case when interpreted by the jury was that the defendant was driving recklessly. And the first accident, it's undisputed that the first accident, collision rather, occurred in a residential area about one o'clock or two o'clock in the afternoon. Correct, Your Honor. That's undisputed. And also, is there a difference if you're driving 23 over with no traffic on a street and it's maybe later in the day or whatever versus traveling at 23 miles per hour in a residential area where there are visible cars coming both ways on the street? Certainly, Your Honor. Excessive speed depends on the circumstances that are surrounding. All right. Okay. That's all I have. Thank you. Thank you. All right. Thank you. I have no questions. My colleagues have covered it sufficiently. Ms. Gossett, you may proceed with your rebuttal, if you like. Yes. Thank you, Your Honor. Just a few points on rebuttal. The state argued at one point that Mr. O'Connor's conduct was reckless because he didn't stop at a traffic light. Evidence of excessive speed and failing to abide a traffic sign, it's not sufficient to establish reckless conduct. And that's People v. Johnson. And therefore, the mayor's evidence that Mr. O'Connor was, even assuming that the state is correct and Mr. O'Connor was excessively speeding, not failing to stop at a stop sign did not mean that Mr. O'Connor's conduct was reckless. In regards to counsel's statement regarding the standard of review of this court, in People v. Connelly, the court held that a motion for a directed verdict presents a question of law. And therefore, the appellate court reviews questions of law under the normal standard of review. And as such, Mr. O'Connor respectfully requests that this court takes a there were essential elements regarding this offenses were missing. And therefore, this case should not have proceeded beyond the decision of the motion for a directed verdict. And I also wanted to talk about the fact that at one point, the state claimed that Mr. O'Connor was not slowing down between the two collisions. Officer Callum testified that Mr. O'Connor's in fact, reducing from 58 miles per hour at the time of the first impact to 38 to 49 miles per hour at the time of the second impact. And Officer Callum did not testify that Mr. Chin's vehicle caused the slowing down of Mr. O'Connor's speed. Reasonable inferences cannot be based on unexisting facts. And here, this was not established by the state, that this fact was not established by the state. And therefore, for all the reasons stated in Mr. O'Connor's brief, and for all the reasons discussed today, Mr. O'Connor respectfully requests that his guilty verdict be vacated and the judgment of conviction reversed. Thank you. All right, thank you very much. Either Justice Burke or Justice McBride, do you have any questions based on what we just heard? No. I do have one question. Is there a conflict then between, Ms. Gossett, your understanding of the evidence? I thought that Mr. Callum testified that when the second accident occurred, Mr. O'Connor's vehicle was traveling at 48 miles per hour. Not like you're saying, he said it was between 39 and 48 miles per hour. Officer Callum testified that the after impact speed of the vehicles, like Mr. Chien's vehicle and Mr. O'Connor's vehicle collided. So the impact speed was 48 miles per hour. But then, the speed of the second impact, Officer Callum testified that it was anywhere between 38 to 48 miles per hour. Okay. Thank you. Thank you. Thank you very much. The case was well argued and well briefed. We will take this case under advisement and a decision will be issued in due course. And thank you very much. Appreciate it.